LAWSON, J.,
concurring.
I concur in the majority opinion, but write to address what I view as the fundamental analytical flaw in an otherwise well-reasoned dissenting opinion. The dissent very logically and persuasively sets forth basic contract law and tort principles that, if applied to this case, would lead to a different result. This analysis, however, fails to recognize that there are some common law principles related to insurance (sometimes called “insurance law”) that uniquely apply in the insurance context. This ease is nothing more than a straightforward application of one of the most basic insurance law principles — most often referred to as the “fortuity” principle or “known loss doctrine.”
As explained in Appleman’s latest insurance treatise:
One of the fundamental assumptions deeply embedded in insurance law is the *610 principle that an insurer will not pay for a loss unless the loss is “fortuitous,” meaning that the loss must be accidental in some sense. The public policy underlying the fortuity requirement is so strong that if the insurance policy itself does not expressly require that the loss be accidental courts will imply such a requirement. The fortuity principle is often expressed with reference to certainty: losses that are certain to occur, or which have already occurred, are not fortuitous.
Robert H. Jerry, II, Insurance Law’s Fundamental Concepts and Assumptions, in New Appleman on Insurance Law Library Edition § 1.05 (2010). “[T]he fortuity and known loss doctrines are ‘integral to the nature of insurance and thus apply as a matter of public policy, irrespective of specific policy terms.’ ” HSB Group, Inc. v. SVB Underwriting, Ltd., 664 F.Supp.2d 158, 183 (D.Conn.2009) (quoting Nat’l Union Fire Ins. Co. v. Stroh Companies, Inc., 265 F.3d 97, 107 (2d Cir.2001)); see also General Housewares Corp. v. Nat’l Surety Corp., 741 N.E.2d 408, (Ind.App.2000) (“the known loss doctrine is not so much an exception, limitation, or exclusion as it is a principle intrinsic to the very concept of insurance”).
“Essentially, the doctrine provides that one may not obtain insurance for a loss that either has already taken place or is in progress.” Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F.3d 508, 516 (3d Cir.1997); see also Rohm & Haas Co. v. Cont’l Cas. Co., 566 Pa. 464, 781 A.2d 1172, 1177 (2001) (“[W]hen an insured knows of an insurable harm incurred prior to the purchase of an insurance policy, the insured has suffered a ‘known loss’ and the damage is no longer a mere risk and is deemed uninsurable.”); 7 Lee R. Russ and Thomas F. Segalla, Couch on Insurance, § 102:8 at 20 (3d ed. 1997) (“losses which exist at the time of the insuring agreement, or which are so probable or imminent that there is insufficient ‘risk’ being transferred between the insured and insurer, are not proper subjects of insurance”).
This basic doctrine does not arise from a desire to protect an individual insurance company from something akin to fraud, as the dissent seems to suggest, but from a recognition that “the insured’s risk is, in a real sense, borne by the insurer’s policyholders as a group, from whose pool of premiums all claims must be paid if the insurer is to remain in business.” Fairfield Ins. Co. v. Stephens Martin Paving, LP., 246 S.W.3d 653, 673-74 (Tex.2008). In other words, because society as a whole relies on insurance, public policy will not permit a transaction that is anathema to the very concept of insurance which, if allowed in the aggregate, could put insurance at risk for all.
In this case, the finder of fact expressly found that David Nourachi committed “fraud” by not disclosing the “known, express defect in title” created by the United States’ superior ownership interest in the land. Although I agree with the dissent that the facts should not have been viewed through the lens of Florida tort law (fraud being an intentional tort), still, the trial court’s finding can only be understood as a finding that Nourachi knew that he had suffered a loss compensable under the title policy before he purchased the First American policy. Because “one may not obtain insurance for a loss ... that the insured either knows of, planned, intended, or is aware is substantially certain to occur” prior to contracting for insurance, 43 Am. Jur. 2d Insurance, § 479, the policy was properly rescinded.
The dissent is correct in its observation that, analytically, the fortuity doctrine would support a broader rule in the title insurance context than the rule applied in *611 the majority opinion (and the cases relied upon therein). However, unlike the dissent, I see no reason to reject the more narrow rule simply because a broader rule might also be justified.